IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FULCRUM INTERNATIONAL, INC., | * | |
| *Plaintiff* | * | |
| v. | * | Civil No. JFM-11-1390 |
| PRINCE GEORGE CENTER I, INC., | * | |
| and | * | |
| WASHINGTON METROPOLITIAN AREA TRANSIT AUTHORITY | * | |
| *Defendants.* | * | |

*****

MEMORANDUM

Fulcrum International, Inc., ("Fulcrum") brought this action against Prince George Center I, Inc. ("PGCI") and the Washington Metropolitan Area Transit Authority ("WMATA") in the Circuit Court for Prince George's County, Maryland. Fulcrum seeks recovery from PGCI for breach of contract and from WMATA under the theory of detrimental reliance. WMATA removed the action to this court. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), WMATA now moves to dismiss the claim against it. For the reasons stated below, its motion will be granted.

I.  BACKGROUND

Fulcrum has worked with WMATA since 2006 to perform a number of build-outs of WMATA's office spaces, in which Fulcrum designs, sells, and installs office furniture. (Compl. ¶¶ 17–18). In each case, Fulcrum's primary contact at WMATA was Michael A. Valentine

("Valentine"), the manager of space planning/design/compliance in WMATA's Department of Administrative Programs & Services. (*Id.* ¶ 18).

In September 2008 WMATA and PGCI entered into a lease for office space in the Metro One Building in Hyattsville, Maryland ("Metro One"). (Mot. to Dismiss at 1). Valentine advised Fulcrum of the Metro One project and asked Fulcrum to submit a build-out proposal to the building's property management company. (Compl. ¶¶ 19–20). The cost of the build-out was to be incorporated into WMATA's rental payments to PGCI, but all plans for the build-out were to be submitted to and approved by WMATA. (*Id.* at ¶ 20).

Fulcrum and PGCI entered into a written agreement on January 27, 2009, for Fulcrum to perform the build-out at Metro One. (*Id.* at ¶ 6; *see also* Ex. 1 to Compl.). WMATA did not sign the agreement. (Compl. ¶ 22). The total price of the work was $190,713.50, including both the original contract amount and the cost of additional work requested by PGCI. (*Id.* ¶ 8).

Fulcrum began work at Metro One in February 2009 and sent its first invoice to PGCI the same month. (*Id.* ¶¶ 9–10). After that invoice went unpaid, Fulcrum contacted Valentine in April 2009 and advised him it could not continue work unless it was paid on time. (*Id.* ¶ 23). Valentine told Fulcrum that it would be paid for work it performed in the event PGCI did not pay. (*Id.*). Based on this assurance, Fulcrum continued its work at Metro One. (*Id.* ¶ 24). After sending four additional invoices to PGCI for later work but not receiving any payment, Fulcrum again contacted WMATA. (*Id.* ¶ 23–24). In response, Valentine set up a meeting of representatives from Fulcrum, PGCI, and WMATA on April 29, 2009, to discuss payment. (*Id.* ¶¶ 25–26). During that meeting Valentine intervened in an argument between representatives of Fulcrum and PGCI and told the Fulcrum representatives, "Guys don't worry, you're going to get

paid." (*Id.* ¶ 26). Later in the meeting, fsValentine again assured the Fulcrum representatives, saying "Don't worry, you're gonna get paid." (*Id.*).

After the April meeting, Fulcrum continued its work at Metro One. (*Id.* ¶ 27). PGCI eventually paid Fulcrum a total of $45,000.00 for the work, leaving an unpaid balance of $145,713.50. (*Id.*). Fulcrum periodically demanded payment from PGCI, but was advised that PGCI did not have money to satisfy its unpaid balance. (*Id.* ¶ 28). Fulcrum then sought payment from WMATA. (*Id.* ¶ 29). In January 2010, PGCI's only substantial asset, Metro One, went into receivership. (*Id.* ¶ 28; *see also* Ex. 5 to Compl.). In May 2010, WMATA advised Fulcrum that it refused to become involved in the contractual dispute between Fulcrum and PGCI. (Compl. ¶ 29; s*ee also* Ex. 6 to Compl.). Fulcrum then brought the present action.

II.     ANALYSIS

WMATA moves to dismiss Fulcrum's complaint on two grounds. First, WMATA argues the suit should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure because it is barred by sovereign immunity. Second, WMATA argues that even if the suit is not barred, it should nevertheless be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Fulcrum fails to state a claim for detrimental reliance. For the reasons that follow, I conclude that the suit against WMATA is barred by sovereign immunity and therefore grant the motion to dismiss pursuant to Rule 12(b)(1). As a result, I do not reach the issue of detrimental reliance.

   A.     Standard of Review

An assertion of governmental immunity is properly addressed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which allows defendants to challenge an action for lack of

3

subject matter jurisdiction. *See Smith v. WMATA*, 290 F.3d 201, 205 (4th Cir. 2002) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

When a governmental entity challenges jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving that subject matter jurisdiction exists. *Id.* The district court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). The district court should only grant the Rule 12(b)(1) motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

    B.    Scope of WMATA's Sovereign Immunity

        a. WMATA Compact

WMATA was established in 1966 to provide a regional transportation system for the Washington, D.C., metropolitan area. *See Delon Hampton & Assocs., Chartered v. WMATA*, 943 F.2d 355, 357 (4th Cir. 1991). The agency was created by an interstate compact ("the Compact") signed by Virginia, Maryland, and the District of Columbia and consented to by Congress.[1] The signatories conferred their respective sovereign immunities on WMATA, including the Eleventh Amendment immunity of the two states. *Watters v. WMATA*, 295 F.3d 36, 39 (D.C. Cir. 2002). Both the Court of Appeals for the Fourth Circuit and the Court of Appeals for the District of Columbia Circuit have therefore held that WMATA is entitled to

---

[1] Congress adopted the compact for the District of Columbia, and the Virginia and Maryland legislatures separately adopted the compact. *See* The Act of Nov. 6, 1966, Pub. L. No. 89-744, 80 Stat. 1324 (1967); Va. Code. Ann. § 56-530; Md. Code Ann. Transp. §10-204.

4

sovereign immunity for certain actions brought against it. *Watters*, 295 F.3d at 39, *Delon*, 943 F.2d at 359.

Three sections of the Compact are particularly relevant in deciding if WMATA is entitled to sovereign immunity in this action.

Section 12 of the Compact, under the heading "General Powers," states that:

> In addition to the powers and duties elsewhere described in this title, and except as limited in this title, the Authority may: (a) Sue and be sued.

Section 80 of the Compact states that:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the zone of any immunity from suit.

Section 81 of the Compact states that:

> The United States District Courts shall have original jurisdiction, concurrent with the courts of Maryland, Virginia and the District of Columbia, of all actions brought by or against the Authority and to enforce subpoenas issued under this title. Any such action initiated in a State or District of Columbia court shall be removable to the appropriate United States District Court in the manner provided by Act of June 25, 1948, as amended (28 U.S.C. 1446).

b. Section 12's Sue and Be Sued Clause

Fulcrum argues the sue and be sued clause of Section 12 creates a general waiver of immunity for all actions against WMATA, except those expressly limited elsewhere in the Compact. (Opp'n to Pl's Mot. to Dismiss at 11). Thus, Fulcrum contends that Section 80 is merely a limitation on the general waiver created in Section 12. (*Id.*). Accordingly, it argues that under *FHA v. Burr*, the presence of a sue and be sued clause creates a presumption that

5

WMATA waived its sovereign immunity and that unless rebutted this presumption satisfies its burden of establishing subject matter jurisdiction. *See FHA v. Burr*, 309 U.S. 242, 245 (1940).

It is true that a sue and be sued clause is to be liberally construed as a waiver of sovereign immunity, unless it is "clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense." *North Carolina v. Tenn. Valley Auth.*, 515 F.3d 344, 347-48 (4th Cir. 2008) (citing *Burr*, 309 U.S. at 245). "Absent such a showing, agencies authorized to 'sue or be sued' are presumed to have *fully* waived immunity." *Id.* at 348 (quoting *FDIC v. Meyer*, 510 U.S. 471, 481 (1994) (emphasis in original)). In WMATA's case, however, case law has established that "the WMATA statute does give such a clear showing. It's called Section 80 of the WMATA compact." *Wainwright v. WMATA*, 958 F. Supp 6, 8 (D.D.C. 1997)

Indeed, both the Fourth Circuit and the D.C. Circuit have foreclosed the argument that Section 12 constitutes a full waiver of WMATA's sovereign immunity.

In *Lizzi v. Alexander*, the Fourth Circuit considered the effect of Section 12 on the partial waiver of immunity contained in Section 80. 255 F.3d 128 (4th Cir. 2001) (*overruled in part on other grounds by Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721 (2003)).[2] The plaintiff in *Lizzi* argued that because Section 12 provides that WMATA can sue and be sued, and because Section 81 makes clear that such suits will be in federal court, that WMATA necessarily

---

[2] *Lizzi* remains good law on this point, despite the Supreme Court's decision in *Hibbs*. In *Lizzi*, the Fourth Circuit found that the Family Medical Leave Act did not constitute a valid abrogation of WMATA's sovereign immunity. *Lizzi*, 255 F.3d at 136. It was on this point that *Hibbs* overruled *Lizzi*, finding that the abrogation was valid. *Hibbs*, 538 U.S. at 740. That is not relevant to the preliminary question of the scope of WMATA's sovereign immunity in the first instance, the issue in the present case.

waived the Eleventh Amendment immunity that protected it from suit in federal court. *Id.* at 133. The Fourth Circuit rejected this argument, holding Section 80 "specifically and expressly delineates the scope of WMATA's consent to be sued." *Id.* (citing *Morris v. WMATA*, 781 F.2d 218, 221 n.3 (D.C. Cir. 1986)). Moreover, the Compact "evinces an intent that the agency did not waive its immunity in all *other* cases." *Id.* (emphasis in original). It is therefore "unavailing to argue that §§ 12 and 81 effected a broad waiver of Eleventh Amendment immunity when § 80 makes so clear the limited nature of any such waiver." *Id.*

The D.C. Circuit likewise rejected the argument that Section 12 constitutes an expansive waiver of WMATA's sovereign immunity. That court found the sue and be sued clause in Section 12 "extend[s] only as far as the more specific (and partial) waiver of sovereign immunity contained in section 80 of the Compact." *Watters*, 295 F.3d at 40 (citing *Lizzi*, 255 F.3d at 133–34, *Morris*, 781 F.2d at 221 n.3). Indeed, "reliance on the 'sue and be sued' clause would be particularly inappropriate in this case where another section of the Compact, § 80, specifically and expressly delineates the scope of WMATA's consent to be sued." *Morris*, 781 F.2d at 221 n.3.

As noted in *Lizzi*, the decisions by the Fourth Circuit and by the D.C. Circuit treat WMATA's sovereign immunity consistently in the two circuits most likely to hear cases in which WMATA is a party. *Lizzi*, 255 F.3d at 134. Fulcrum's argument to treat the sue and be sued clause of Section 12 in a manner inconsistent with this precedent therefore fails.

        c.    Section 80's Partial Waiver of Sovereign Immunity

Waivers of sovereign immunity must be clear and unequivocal. *Martin v. WMATA*, 273 F. Supp. 2d 114, 119 (D.D.C. 2003). In analyzing whether a sovereign has waived its immunity, a court is to "strictly construe the scope of any alleged waiver in favor of the sovereign."

7

*Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006) (citing *Lane v. Pena*, 518 U.S. 187, 196 (1996)). Consent to suit is never implied. *Id.* (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247 (1985)). Any ambiguities are construed in favor of immunity. *Id.* (citing *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992)).

The scope of WMATA's sovereign immunity is delineated in Section 80 of the WMATA Compact. *Watters*, 295 F.3d at 40; *Smith*, 290 F.3d at 206; *Lizzi*, 255 F.3d at 133–34. That section provides that WMATA "shall be liable for its contracts and for its torts… committed in the conduct of any proprietary function." Md. Code Ann. Transp. § 10-204(80). Under this provision, WMATA is still subject to suit for contractual claims. However, as at least two courts have held, this waiver of immunity does not to quasi-contractual claims. *See Greenbelt Ventures, LLC v. WMATA*, No. AW-10-00157, 2010 U.S. Dist LEXIS 90345, at *22 (D. Md. Sept. 1, 2010); *Martin*, 273 F. Supp. 2d at 119.

The plaintiff in *Martin* brought claims against WMATA for both breach of contract and promissory estoppel after the agency denied his application for the position of part-time bus operator. *Martin*, 273 F. Supp. 2d at 116–17. The plaintiff argued first that the agency's published hiring procedures constituted an offer which he accepted by submitting an application, and that the agency's breach of its own procedures gave rise to a contractual claim. *Id.* at 117. He further argued that even if there were no contract, WMATA breached oral and written assurances that it would follow its published hiring procedures, and that he relied on those assurances to his detriment, giving rise to a promissory estoppel claim. *Id.* The *Martin* court held the contractual claims could not be dismissed on sovereign immunity grounds. *Id.* at 119. However, it distinguished the promissory estoppel claim and found WMATA immune from such claims because "the Compact does not expressly waive WMATA's sovereign immunity for that

8

particular cause of action." *Id.* It held that Section 80's waiver "only denotes WMATA's liability for its contracts and torts occurring in the performance of non-governmental function; it does not mention promissory estoppel, which is a distinct legal theory." *Id.*

Likewise, in *Greenbelt Ventures*, the court found WMATA entitled to sovereign immunity against claims of promissory estoppel and unjust enrichment. *Greenbelt Ventures*, No. AW-10-00157, 2010 U.S. Dist LEXIS 90345, at *22 (D. Md. Sept. 1, 2010). In that case, Greenbelt Ventures purchased the company that WMATA had approved to develop the agency's property surrounding the Metrorail station in Greenbelt, Maryland. *Id.* at *2–3. The development company was not permitted to assign the project without prior written approval from WMATA, which was not to be unreasonably withheld. *Id.* at *4. Greenbelt Ventures contended that for two years WMATA orally represented that the agency had already approved the ownership change and that the company detrimentally relied on those assurances in continuing the development. *Id.* After WMATA failed to approve the change, Greenbelt Ventures sued WMATA on several theories, including breach of contract, promissory estoppel, and unjust enrichment. *Id.* at *8. WMATA conceded that the breach of contract claim was not barred by sovereign immunity, but the court distinguished that claim from the quasi-contractual claims. *Id.* at *22–23. Because the plaintiff failed to cite "any authority demonstrating that WMATA has expressly waived its sovereign immunity for any quasi-contractual claims" the court held WMATA entitled to immunity on those counts. *Id.* at 22.

C. Nature of Detrimental Reliance Action

In this case, Fulcrum brings only a detrimental reliance action against WMATA. (Compl. ¶ 13-30). In Maryland, the term detrimental reliance is interchangeable with, but preferred to, the term promissory estoppel. *See Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 342

9

Md. 143, 146 n.1 (1996). The plaintiff in this action, like the plaintiff in *Greenbelt Ventures*, fails to cite any authority showing that WMATA has expressly waived immunity for such quasi-contractual claims. *Greenbelt Ventures*, 2010 LEXIS 90345, at *22. Accordingly, WMATA is entitled to sovereign immunity as to Fulcrum's claim of detrimental reliance. WMATA's motion to dismiss pursuant to Rule 12(b)(1) is thereby granted.

    III.    <u>CONCLUSION</u>

For the foregoing reasons, WMATA's motion to dismiss is granted. A separate order is being entered herewith.


Date: September 15, 2011                          /s/
                                                  J. Frederick Motz
                                                  United States District Judge